UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————

)
ELLIOTT EICHENHOLZ,             )
)
        Plaintiff,      )
)
v.                     )      Case No. 16-cv-11786-LTS
)
BRINK'S INCORPORATED and   )
GORDON CAMPBELL        )
)
        Defendants.     )
———————————————————————)

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DOCS. NO. 84, 86) AND MOTIONS TO STRIKE (DOCS. NO. 88, 100)

March 6, 2019

SOROKIN, J.

Elliott Eichenholz is suing his former employer, Brink's Incorporated ("Brink's"), and his former supervisor, Gordon Campbell, for alleged violations of the Family and Medical Leave Act ("FMLA"), discrimination under Massachusetts state law and the Americans with Disabilities Act ("ADA"), and tortious interference. At the conclusion of discovery, Eichenholz moved for summary judgment on the FMLA claims and the defendants cross-moved for summary judgment on all claims. For the reasons set forth below, Eichenholz's motion for summary judgment is DENIED and the defendants' motion for summary judgment is ALLOWED IN PART and DENIED IN PART.

I.    <u>FACTS</u>

The following basic facts are undisputed and are material to both motions for summary judgment. In 2014, Brink's hired Eichenholz as a "Global Head of Fleet." Doc. No. 99 ¶ 2. Eichenholz began working for Brink's in April 2014, <u>id.</u> ¶ 5, at which time he was sixty years

old, id. ¶ 222.  On October 14, 2015, Eichenholz saw a doctor and decided to have surgery to correct a problem he was experiencing with his left foot.  Id. ¶ 66.  The same day, he notified his supervisor, Campbell, that he intended to have surgery.  Id. ¶ 69.  Eichenholz underwent surgery on November 2, 2015.  Id. ¶ 131.  He did not work from October 31, 2015 through January 17, 2016.  Id. ¶¶ 130, 179.  Eichenholz received multiple extensions of his leave, and the entire period of time was treated as FMLA leave, for which he was fully paid.  See id. ¶¶ 162, 165, 173.

A few days before Eichenholz's leave was set to begin, he had a phone call with Campbell where Campbell discussed areas in which he wanted Eichenholz to improve, and the topic of a performance improvement plan ("PIP") came up.  Id. ¶ 80.  On November 11, 2015, while Eichenholz was on leave, Brink's sent Eichenholz a PIP by mail to his home.  Id. ¶ 140.  The PIP included specific 30, 60, and 90-day objectives and a warning that failure to complete the objectives in a timely manner could "result in disciplinary action, up to and including termination."  Doc. No. 99-3 at 36.  Additionally, the PIP stated that Campbell's expectations were that Eichenholz would "immediately take action to address the action items listed above" and that Campbell would "see immediate and sustained improvement on all items listed."  Id. On November 24, 2015, Eichenholz contacted the EEOC.[1]  Doc. No. 99 ¶ 156.

Eichenholz returned to work on January 18, 2016, subject to a two-week travel restriction.  Id. ¶ 181.  On January 29, 2016, Campbell sent the PIP to Eichenholz via email, copying Mark Jordan, who worked in Human Resources at Brink's.  Id. ¶ 182.  In the email, Campbell stated that the PIP had been sent to Eichenholz on November 11 and that "[i]t was

---

[1] The EEOC has no authority to enforce the FMLA; Congress vested that authority in the Department of Labor.  See 29 U.S.C. § 2601 et. seq.

requested that [Eichenholz] sign and return a copy to [Campbell] and Mark Jordan acknowledging receipt," but that they had yet to receive any such acknowledgement. Doc. No. 99-4 at 130. The email further stated: "Now that you have returned from your FMLA / STD I expect you to develop a plan to address the specific areas requiring attention." Id.

On February 1, 2016, Eichenholz sent an email to Campbell, copying Jordan, in which he resigned from his position at Brink's. Id. at 137. Eichenholz stated that he was resigning "in order to ensure that [he was] no longer subjected to a hostile work environment" and mentioned the "improper and pretextual Performance Improvement Plan" issued while he was on leave. Id. In the email, Eichenholz stated that he was providing Brink's with two weeks' notice and that he would work during that time period to "support all fleet activities and work to ensure as smooth a transition as possible." Id. Jordan accepted Eichenholz's resignation and instructed him not to work during the two-week period. Doc. No. 99 ¶ 189. Though he did not work, Eichenholz was paid for the two-week period ending February 15, 2016. Doc. No. 105-1 at 7. The parties dispute whether Eichenholz was paid in full for the vacation time he had accrued. Compare Doc. No. 98 at 5, with Doc. No. 105 at 4. This dispute turns on whether Eichenholz's accrued vacation time "zeroed out" on January 1 of each year.

Eichenholz filed an eleven-count amended complaint. Doc. No. 12. He alleges FMLA retaliation (Count I), FMLA interference (Count II), age discrimination (Counts III and VII), disability discrimination (Counts IV, V, VIII, and IX), sex discrimination (Count VI), state law retaliation (Count X), and intentional interference with contract (Count XI). Eichenholz filed for partial summary judgment on both FMLA claims (Counts I and II). Doc. No. 84. Brink's and Campbell opposed and moved for summary judgment on all eleven counts. Doc. No. 86. Extensive briefing ensued, during the course of which Eichenholz voluntarily dismissed the age

and sex discrimination claims (Counts III, VI, and VII). Doc. No. 98 at 15 n.47. Additionally, the defendants filed a motion to strike expert testimony proposed by Eichenholz, Doc. No. 88, and Eichenholz filed a motion to strike specified portions of the defendants' responses to his statement of undisputed material facts, Doc. No. 100. The Court heard argument from the parties on February 25, 2019 on all pending motions.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute "is one on which the evidence would enable a reasonable jury to find the fact in favor of either party." Perez v. Lorraine Enters., Inc., 769 F.3d 23, 29 (1st Cir. 2014). "A 'material' fact is one that is relevant in the sense that it has the capacity to change the outcome of the jury's determination." Id. (citation omitted). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). However, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009).

## III.    DISCUSSION

### A.    Eichenholz's Motion for Summary Judgment

In resolving Eichenholz's motion for summary judgment, the Court considers the undisputed facts, as set forth above, the evidence submitted by the defendants, even where disputed, and the reasonable inferences which may be drawn in favor of the defendants. Eichenholz moves for summary judgment on the FMLA retaliation claim (Count I) and the FMLA interference claim (Count II). The Court considers each in turn.

i.   FMLA Retaliation

In order to establish a prima facie case of FMLA retaliation, Eichenholz must establish that: (1) he availed himself of a protected FMLA right; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between his protected conduct and the adverse employment action. Germanowski v. Harris, 854 F.3d 68, 73 (1st Cir. 2017). Drawing all reasonable inferences in the defendants' favor, Eichenholz cannot meet his burden at this stage to demonstrate that he is entitled to judgment as a matter of law. Primarily, Eichenholz is unable to demonstrate, based on the summary judgment evidence, that there was a causal connection between his protected conduct and any of the alleged adverse employment actions.

Eichenholz asserts that he was "adversely affected by several employment decisions, received two retaliatory PIPs, and was ultimately terminated contrary to Brink's policy." Doc. No. 85 at 18. Accepting, without deciding, that the PIP or any of the other employment decisions (discussed in detail below) was an "adverse employment action," Eichenholz cannot meet his burden to demonstrate that there is no genuine dispute of material fact regarding the causal connection between any of these actions and his request for FMLA leave. Eichenholz notes the temporal proximity between his request for FMLA leave and the phone call in which Campbell stated that he would be placed on a PIP. Doc. No. 99 ¶ 80; see also Doc. No. 85 at 13-14. However, at this stage, there is a genuine dispute of fact as to whether the concerns laid out in the PIP predated Eichenholz's request for leave, which would undermine the causal connection Eichenholz must establish. See, e.g., Doc. No, 99 ¶ 80. Given the evidence offered by the defendants, a reasonable jury could conclude, for example, that the issues, concern, and oversight of Eichenholz predated the PIP. A jury could also reasonably conclude that the timing of the PIP was unrelated to Eichenholz's request for FMLA leave or that the PIP was not in fact

an adverse employment action.[2]  Accordingly, Eichenholz's motion for summary judgment is DENIED on Count I.

### ii.  FMLA Interference

In order to establish a prima facie case for FMLA interference, Eichenholz must show that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave his employer notice of his intention to take leave; and (5) his employer denied him FMLA benefits to which he was entitled.  Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 722 n.8 (1st Cir. 2014). The evidence, viewed in the light most favorable to the defendants, demonstrates that Eichenholz received all FMLA leave to which he was entitled.  Not only did he go on leave at the time he initially requested, Doc. No. 99 ¶¶ 69, 131, but he also received several extensions of his leave, id. ¶¶ 162, 165.  Additionally, it is undisputed that he returned to Brink's with the same position, responsibilities, and pay.  Therefore, Eichenholz cannot meet his burden, and his motion for summary judgment is DENIED on Count II.

### B.    Defendants' Motion for Summary Judgment

The relevant factual record which the Court considers in resolving the defendants' motion for summary judgment differs from the record used to resolve Eichenholz's motion.  Again, the Court considers the undisputed facts, as set forth above, but now considers also the evidence submitted by Eichenholz, even where disputed, and the reasonable inferences which may be drawn in favor of Eichenholz.  The defendants move for summary judgment on all counts.

---

[2] These are by no means the only conclusions a reasonable jury could draw, nor are they necessarily the most likely conclusions.  However, they are nonetheless permissible conclusions a jury could draw, based on the summary judgment record.

i.   FMLA Interference

The Court need only address the fifth element of the prima facie case for FMLA interference.  Even viewing the record in the light most favorable to Eichenholz, there is no genuine dispute of material fact that he received all FMLA leave to which he was entitled.  Based on the undisputed facts and the evidence presented by Eichenholz, even where disputed, no reasonable jury could conclude that his employer denied him FMLA benefits to which he was entitled, as required under the standard adopted by the First Circuit.  Carrero-Ojeda, 755 F.3d at 722 n.8 (1st Cir. 2014).  Though Eichenholz sets forth many theories upon which he claims Campbell and Brink's attempted to interfere with his FMLA rights, he cannot escape the facts that he received all FMLA leave to which he was entitled and that he returned to Brink's in the same position with the same pay as he had before he took leave.

However, one more point requires discussion.  Plainly, an employee does not have the right to be free from all contact whatsoever from her employer while on FMLA leave; simply put "there is no right in the FMLA to be 'left alone.'"  Callison v. City of Philadelphia, 430 F.3d 117, 121 (3d Cir. 2005); see also Sabourin v. Univ. of Utah, 676 F.3d 950, 961 (10th Cir. 2012) ("In short, the [employer's] request for materials from [the plaintiff] was not an impermissible demand for work during FMLA leave.  It was a request for a modest, unburdensome effort to enable [the plaintiff's] work to be performed while he was on leave.").  Although Eichenholz did not expressly advance the argument that the FMLA protects some intangible right to be free from an employer's requests to do work, even when as here the employee performs no work while on FMLA leave, some discussion was had at the hearing about this topic.

Assuming, without deciding, that such a right exists under the FMLA, no reasonable jury could conclude on the record before the Court that Brink's or Campbell denied Eichenholz this

right while on leave. Viewing the facts in the light most favorable to Eichenholz shows that he received the PIP on November 16, approximately two weeks into his leave, but he did no work on the PIP during the entire time he was on leave. During his leave, Brink's did not follow up on the PIP plan. Eichenholz also received several phone calls during the course of his leave from Campbell's assistant, inquiring into his health and his projected return date (which changed several times due to his evolving medical condition). Doc. No. 99 ¶ 164. After Eichenholz returned to work (but not immediately), Campbell directed him to develop a "plan" to respond to the PIP. Such minimal contacts, without more, do not rise to the level of interference contemplated by the First Circuit, even assuming the FMLA does in some circumstances protect an employee's intangible right to be free from requests by his employer to do work while on leave.

Accordingly, the defendants' motion for summary judgment is ALLOWED as to Count II.

### ii. Adverse Employment Action

The remaining counts, with the exception of the tortious interference claim, all require Eichenholz to prove that he suffered an adverse employment action.[3] The Court first addresses the disability discrimination claims advanced under state and federal law as well as the state law

---

[3] To make out a prima facie case of discrimination under the ADA, Eichenholz "must show that he (1) is disabled within the meaning of the ADA; (2) is qualified to perform the essential functions of his job with or without a reasonable accommodation; and (3) was discharged or otherwise adversely affected in whole or in part because of his disability." Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 87 (1st Cir. 2012). "To establish a prima facie case of employment discrimination on the basis of handicap under G.L. c. 151B, § 4(16), the plaintiff must show that he is 'handicapped' within the meaning of the statute; that he is a 'qualified handicapped person' capable of performing the essential functions of his job either without accommodation or with a reasonable accommodation; and that he was subject to an adverse employment action because of his handicap." Godfrey v. Globe Newspaper Co., 457 Mass. 113, 120 (2010).

retaliation claim, as all of these claims require, per the arguments of the parties, the same showing to establish an adverse employment action.

In the context of the discrimination and state law retaliation claims, Eichenholz must show that he was subject to an adverse employment action, which "typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010).[4] Eichenholz alleges five theories of adverse employment actions: (1) that he was constructively discharged, (2) that when Jordan accepted his resignation and instructed him not to work during his two-week notice period, he was effectively "terminated," (3) that he was not paid for all the vacation time to which he was entitled, (4) that Campbell lowered his 2015 performance review scores, and (5) that Brink's issued the PIP. The Court considers the theories individually and collectively. First, it should be noted that it is undisputed that when Eichenholz returned from leave, he returned to the same

---

[4] The standard applied by the Supreme Judicial Court of Massachusetts ("SJC") for claims brought under Mass. Gen. Laws ch. 151B is substantially similar to the federal standard. See, e.g., Yee v. Massachusetts State Police, SJC-12485 2019 WL 347521 at *4 (Mass. Jan. 29, 2019) ("We have said that an action taken by an employer is an adverse employment action where it is substantial enough to have materially disadvantaged an employee. Material disadvantage for this purpose arises when objective aspects of the work environment are affected. The disadvantage must be objectively apparent to a reasonable person in the employee's position; subjective feelings of disappointment and disillusionment will not suffice.") (internal quotation marks and citations omitted). Additionally, in Yee, the SJC declined to reach the question of "whether to apply a different standard to defining adverse employment actions in the retaliation context under G. L. c. 151B." Id. at *4 n.8. Neither party in this case has argued that the analysis of whether an action constitutes an "adverse employment action" is different as among the federal discrimination claims (Counts IV and V), the state discrimination claims (Counts VIII and IX), and the state retaliation claim (Count X). Accordingly, the Court analyzes all five claims together for the purpose of determining whether a reasonable jury could conclude Eichenholz suffered a legally cognizable "adverse employment action."

title, pay, and responsibilities.  See Doc. No. 99-12 at 298.  Additionally, he did no work for Brink's while on leave, though he did receive the PIP via mail.

        a.   Constructive Discharge

The Court turns first to Eichenholz's argument that he was constructively discharged by Brink's.  "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'"  Green v. Brennan, 136 S. Ct. 1769, 1776 (2016) (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004)).  No reasonable jury could conclude that on February 1, 2016, when he wrote his resignation letter, Eichenholz's working conditions were so intolerable that a reasonable person in his position would have felt compelled to resign.  He had received all the FMLA leave which he initially sought, and Brink's granted each of the several extensions he requested.  While on leave, he performed no work for Brink's.  Upon his return, Brink's honored the two-week travel restriction imposed by his doctor and allowed him to work from home.

Additionally, the undisputed evidence shows that Campbell did not raise the PIP with Eichenholz until he returned to work and was nearing the end of the two-week travel restriction.  At that time, Campbell asked Eichenholz to develop a "plan" to meet the goals of the PIP.  Doc. No. 99-4 at 130.  This gave Eichenholz the opportunity to weigh in about the objectives and deadlines laid out within the PIP.  Though Brink's indisputably sent Eichenholz the PIP while he was on leave, it is not disputed that the timelines set forth in that PIP, even accepting Eichenholz's contention that they took effect immediately, were not enforced.  As such, Eichenholz's argument that the deadlines set forth in the PIP put him in an impossible position where he was forced to resign or to be fired for not meeting the goals had no merit on February

1, 2016. Whether or not Brink's was contemplating firing Eichenholz eventually (something that is far from clear), it did not and was not doing so on February 1. Rather, Brink's invited Eichenholz to develop a plan to address the PIP, giving him the opportunity to address, among other things, whether any of the objectives were not properly not his responsibility, whether the suggested periods were reasonable, and whether the PIP should include modified or different objectives. The summary judgment record does not permit the conclusion that Eichenholz suffered a constructive discharge.

      b.  <u>Acceptance of Resignation</u>

Second, Eichenholz asserts that it was an adverse employment action when Jordan accepted his resignation on the day it was tendered and instructed him not to work for the following two weeks. At multiple points during the course of briefing, Eichenholz argues that the Court previously found that Brink's terminated his employment, relying on the Court's decision on the motion to dismiss. <u>See, e.g.</u>, Doc. No. 98 at 6; <u>see also</u> Doc. No. 33 at 4 (Order on Motion to Dismiss, stating that "[o]n February 1, 2016, Plaintiff resigned, giving two weeks' notice, to 'ensure that he was no longer subjected to unlawful harassment . . . [and] a hostile work environment.' On February 2, 2016 Brink's terminated Plaintiff's employment.") (alterations in original). However, a motion to dismiss requires a court to "accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff." <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993). Accordingly, a recitation of a "fact" in an order on a motion to dismiss signifies nothing about its factual accuracy, only that the plaintiff pled it in the complaint. Moreover, based on the undisputed facts before the Court, Brink's did not "terminate" Eichenholz's employment in the conventional sense; that is, Brink's did not fire him. Brink's terminated Eichenholz's employment only in the sense that it accepted

his resignation, closed his email account, and took the necessary steps to conclude the employment relationship.

Whether or not it was the formal policy of Brink's to accept an employee's resignation on the same day has no bearing on whether Jordan's acceptance of Eichenholz's resignation was an adverse employment action. It clearly was not. Eichenholz cites to a single case in support of his position that not allowing him to work for the two weeks he offered was an adverse employment action. Rodriguez v. Wet Ink, LLC, Civ. No. 08-00857-MSK-CBS, 2012 WL 1079006 (D. Colo. Mar. 30, 2012). However, in that case, on the same day the employee gave her two-week notice, the employer terminated her and did not pay her for the following two weeks. The adverse employment action therefore was cutting off the employee's pay for that two-week period. In this case, Eichenholz concedes he was paid for the two-week period he offered to work. As such, Jordan's acceptance of his resignation and instruction not to work the following two weeks did not constitute an adverse employment action.

      c.  Vacation Pay

Third, Eichenholz argues that Brink's failed to pay him for the vacation time he had accrued at the time he left. At the hearing, Eichenholz conceded that his Rule 26 disclosure did not list vacation pay as an item of damages. When the defendants asked for an itemization of all damages by way of an interrogatory propounded during discovery, Eichenholz responded with a number of items including front pay and back pay, but never listed vacation pay as a form of pay owed or the compensation now sought for vacation pay as a component of another category of damages. Additionally, Eichenholz never supplemented either disclosure. Eichenholz cannot at this late stage claim a new type of damages. By so doing, Eichenholz precluded the defendants from investigating the vacation pay issue as they, reasonably based on his disclosures, concluded

the case presented no such issue.  For this reason, the Court dismisses the vacation pay theory of adverse employment action.

Even when considered on the merits, the vacation pay Eichenholz claims does not constitute an adverse employment action.  The undisputed evidence shows that in November 2015, Eichenholz's pay stub showed that he had accumulated 73.33 hours of vacation time.  Doc. No. 108-2 at 2.  His January 29, 2016 pay stub showed that he still had 73.33 accrued hours of vacation time.  Doc. No. 105-1 at 18.  Additionally, his February 12, 2016 pay stub showed that he had accumulated 80 hours of vacation time.  Doc. No. 105-1 at 7.  Eichenholz submitted a declaration in which he states that no one at Brink's ever told him that his vacation days would "zero out" at the end of each calendar year.[5]  Doc. No. 108-3 at 2-3.  Based on this declaration and the submitted pay stubs, Eichenholz argues that he was entitled to be paid for the 80 hours of vacation time reflected on the February 12 pay stub.

However, the defendants submitted an uncontradicted declaration by Jordan which discussed the vacation pay question.  Doc. No. 105-1 at 1-5.  In this declaration, Jordan explains that Brink's policy is a "use it or lose it" policy, meaning that all employees "are required to use vacation time within the year it accrues, and any accrued vacation time that is unused at the end of the calendar year will not carry over to next year."  Id. at 2.  Additionally, Jordan offers an explanation as to why Eichenholz's January 2016 pay stub reflects the same number of vacation days as his December 2015 stub.  Jordan says that the January 2016 pay stub "does not accurately reflect [Eichenholz's] 2016 accrued vacation" because Eichenholz's vacation accrual amount was not reset to zero on January 1, 2016, as it should have been.  Id.  The reason for this

---

[5] He does not assert in his affidavit that he was promised or even advised that his vacation pay would roll over year-to-year.

oversight, Jordan explains, is that "Eichenholz's profile was not active in the relevant computer system, because he was out on a leave, at the time the system zeroed out all balances to start 2016." Id. at 2-3.

Neither party submitted pay stubs from the end of 2014 or the beginning of 2015 showing whether Eichenholz's vacation time was "zeroed out" in January 2015. Counsel for the defendants represented at the hearing that the reason these pay stubs were not provided was because the box which shows accrued vacation time on pay stubs was added some time in 2015, and therefore it would not be possible to tell from the prior pay stubs whether Eichenholz's accrued vacation time had "zeroed out" in January 2015. Therefore, the only evidence in the summary judgment record relevant to this issue are the declarations by Eichenholz and Jordan and the pay stubs submitted by the parties.

Based on this evidence, Eichenholz has presented no genuine dispute of material fact as to whether he was entitled to payment of 80 hours of vacation time. Though he asserts that he did not know about the Brink's policy of "zeroing out" vacation time, his lack of knowledge does not present a genuine dispute that Brink's did in fact apply that policy to all employees. Eichenholz has presented no evidence upon which a reasonable jury could conclude that this policy was, by agreement or custom, not generally applied to him. As such, failure to pay him for 80 hours of vacation time was not an adverse employment action because there is no evidence upon which a reasonable jury could conclude that he was entitled to that amount of vacation pay under the terms of his employment.

d. 2015 Performance Review

Fourth, Eichenholz asserts that Campbell lowered his 2015 performance review scores. He asserts that on February 4, 2016, three days after he resigned, "Campbell completed

Eichenholz's 2015 performance evaluation and lowered Eichenholz to a 'Full Performance Minus.'" Doc. No. 99 ¶ 196. The defendants dispute Eichenholz's characterization of this performance review and assert that it was "still ongoing and not completed when Eichenholz left the company." Id. The defendants assert that the document Eichenholz cites to, Doc. No. 93 at 14-20, was never finalized or shown to Eichenholz. Doc. No. 99 ¶ 196. However, the finality of the review is irrelevant because Eichenholz cannot establish, based on the summary judgment record, that even if it were a final review and Campbell did in fact give him a negative evaluation, that such action "involve[d] discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Morales-Vallellanes, 605 F.3d at 35. The performance review was completed after Eichenholz left Brink's and thus did not affect any portion of his employment there. Nonetheless, he asserts, in a wholly conclusory fashion, that had he remained employed by Brink's, the performance review would have harmed him with respect to any bonus he would have received. Doc. No. 99 ¶ 50(a). However, Eichenholz resigned from Brink's before bonuses for 2015 were distributed. He cannot base a claim on a counterfactual situation about the harm he would have suffered had he not resigned, especially in light of the fact that his constructive discharge claim fails for the reasons previously discussed.

Eichenholz additionally asserts that the lowered performance review "has affected [his] future employment opportunities." Doc. No. 98 at 12. However, the only evidence to which he cites in support of this assertion is his second declaration, which reads: "[s]ince my termination of employment by Brink's, which included an undeserved performance evaluation for 2015, and despite years of trying, I have been unable to find employment equal to or greater than the compensation I received at Brink's." Doc. No. 99-27 at 3. Without any evidence that the 2015

performance review was disclosed to potential employers or otherwise connected to Eichenholz's failure to find comparable employment, no reasonable jury could conclude that the lowered scores in the 2015 performance review constituted an adverse employment action.  See Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 73 (1st Cir. 2011) (holding that "a criticism that carries with it no consequences is not materially adverse and therefore not actionable.").

       e.   <u>Performance Improvement Plan</u>

Eichenholz asserts that issuing the PIP was an adverse employment action.  Assuming, without deciding, that a PIP may in some cases be an adverse employment action, the PIP issued in this case was not one under the standard applicable to the discrimination and state law retaliation claims.  The PIP in this case did not alter the conditions of Eichenholz's work environment in any way, nor did it cause a change in benefits.  It simply asserted concrete, specific goals for Eichenholz to work toward at specific intervals and seems to have carried with it greater oversight from Campbell.  Eichenholz himself admitted in his deposition that the PIP did not change the terms or conditions of his employment and that it essentially amounted to closer supervisory oversight of his work by Campbell.  Doc. No. 99-12 at 298.  No reasonable jury could therefore conclude that the PIP in this case constituted a material change in any of Eichenholz's daily activities, responsibilities, or benefits.  Therefore, it does not rise to the level of a legally cognizable adverse employment action under the standard applicable to the discrimination and state law retaliation claims, and summary judgment is appropriate.

Because Eichenholz has identified no employment action which rises to the level of an "adverse employment action," the defendants' motion for summary judgment is ALLOWED as to Counts IV, V, VIII, IX, and X.

iii. <u>FMLA Retaliation</u>

As previously discussed, a prima facie case of FMLA retaliation requires the plaintiff to establish that: (1) he availed himself of a protected FMLA right; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between his protected conduct and the adverse employment action. <u>Germanowski</u>, 854 F.3d at 73 (1st Cir. 2017). The First Circuit has not articulated the standard applicable to "adverse employment actions" in the context of FMLA retaliation claims. As defendants note, district courts in this Circuit have split on the question of which standard is applicable, with some applying the standard used in the federal discrimination context[6] and others applying the standard used in the federal retaliation context.[7]

In the context of federal retaliation claims, the United States Supreme Court has held that to prove an action was an "adverse employment action," "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted). The Court is persuaded by the reasoning of the other sessions in this district which applied the <u>Burlington Northern</u> standard, especially considering the principles underlying a retaliation claim. Therefore, in resolving the FMLA retaliation claim, the Court determines whether a reasonable employee would have found any of the employment actions identified by Eichenholz to be "materially adverse," meaning that they

---

[6] <u>See</u> <u>Alvarado-Cotto v. Municipality of Aibonito</u>, Civ. No. 10-2241-JAG, 2013 WL 3168266, at *7 (D.P.R. Apr. 5, 2013).
[7] <u>See</u> <u>Consedine v. Willimansett E. SNF</u>, 213 F. Supp. 3d 253, 264 (D. Mass. 2016); <u>Bellone v. Southwick-Tolland Reg'l Sch. Dist.</u>, 915 F. Supp. 2d 187, 199 (D. Mass. 2013), <u>aff'd</u>, 748 F.3d 418 (1st Cir. 2014).

"might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id.

The Court concludes that based on the record, the issuance of the PIP and the 2015 performance review are the only theories of adverse employment actions upon which Eichenholz could meet his burden at trial to succeed on the FMLA retaliation claim. Even under the arguably lower Burlington Northern standard, neither the defendants' acceptance of Eichenholz's resignation nor the denial of the vacation pay which he alleges he was owed constitute an adverse employment action.

As to the PIP and the 2015 performance review, there exists a genuine dispute of material fact as to whether "a reasonable employee would have found the challenged action materially adverse." Burlington Northern, 548 U.S. at 68. Additionally, there exists a genuine dispute of material fact as to whether there was a causal connection between Eichenholz's invocation of his FMLA rights and the issuance of the PIP. However, "the cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses." Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 739–40 (2003).[8] Accordingly, "a

---

[8] 29 U.S.C. § 2617 permits an employee whose FMLA rights were violated to recover:
 (A) for damages equal to—
     (i) the amount of—
          (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
          (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;
     (ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and
     (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer

plaintiff may not recover damages for emotional distress under the FMLA." Pagan-Colon v.

Walgreens of San Patricio, Inc., 697 F.3d 1, 16 (1st Cir. 2012). Plaintiff shall show cause within

seven days that he can proceed with the FMLA retaliation claim in light of the Court's ruling by

either identifying the damages recoverable under this claim, as defined by the Court, or

explaining why such a claim is viable in the absence of any damages. Defendants may respond

within seven days thereafter. Each memorandum is limited to seven pages.

### iv. Tortious Interference Claim

To succeed on a claim for tortious interference, a plaintiff must prove:

> (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.

Blackstone v. Cashman, 448 Mass. 255, 260 (2007). Even if Eichenholz could prove that

Campbell knowingly induced a breaking of his contract with Brink's, he has set forth no

evidence upon which a reasonable jury could conclude that Campbell's motive or means for

doing so was improper. Indeed, Eichenholz's entire argument appears to be that he was forced

out of his job in retaliation for his disability and his taking FMLA leave. However, "[i]nsofar as

the plaintiff's common law claim is merely a recast version of a claim that could have been made

under G.L. c. 151B, it is barred by that statute's exclusivity provision." Verdrager v. Mintz,

Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 415 (2016) (internal quotation

---

had reasonable grounds for believing that the act or omission was not a violation
of section 2615 of this title, such court may, in the discretion of the court, reduce the
amount of the liability to the amount and interest determined under clauses (i) and (ii),
respectively; and
(B) for such equitable relief as may be appropriate, including employment, reinstatement, and
promotion.

marks and citations omitted).  Eichenholz's tortious interference claim is merely a backdoor way of bringing his discrimination claim, which is not proper under the statute.

Even if Eichenholz's tortious interference claim did not constitute a recast version of his discrimination claims, he cannot prove, based on the summary judgment record, that Campbell acted with actual malice.  When an employee claims tortious interference against his supervisor, he must prove that the supervisor acted with "actual malice," defined as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest."  Blackstone v. Cashman, 448 Mass. 255, 260 (2007).  Eichenholz has not submitted sufficient evidence from which a reasonable jury could conclude that Campbell acted with actual malice.  Accordingly, the defendants' motion for summary judgment is ALLOWED on Count XI.

> C.      Defendants' Motion to Strike

The defendants filed a motion to strike, Doc. No. 88, challenging an expert report offered by Eichenholz.  Eichenholz's proffered expert is employment law attorney, Julie Moore, who offered an opinion relating to whether Brink's exercised reasonable care to prevent harassment when training its managers and supervisors, whether the PIP was properly issued, and whether Brink's exercised reasonable care to prevent and correct the harassment Eichenholz claims he suffered.  Doc. No. 89-1 at 2.  The defendants move to strike on the grounds that Ms. Moore's report is not relevant and that it is an improper expert opinion.

The Court has reviewed Ms. Moore's report and finds that to the extent it discusses whether or not Brink's exercised reasonable care in various ways, it is not relevant to the issues at hand.  None of the claims asserted by Eichenholz require proof of negligence or that Brink's failed to follow best practices.  Additionally, to the extent the report discusses whether or not the PIP constituted an adverse employment action, it invades the province of the judge by drawing a

legal conclusion. At the hearing, counsel for Eichenholz argued that when Ms. Moore concluded that the PIP was an "adverse" action, she used the word "adverse" in the colloquial sense, rather than as a legal term of art. To that extent, such a conclusion is not relevant to the resolution of the motions for summary judgment.

Because the Court does not rely upon Ms. Moore's report in resolving summary judgment, the defendants' motion to strike is DENIED without prejudice to renew as a motion in limine before trial.

D.    Eichenholz's Motion to Strike

Eichenholz also filed a motion to strike, Doc. No. 100, challenging defendants' responses to his submitted statement of material facts. In this motion, Eichenholz challenges many of the defendants' proffered responses to his numbered facts, which were jointly submitted as Doc. No. 99. Eichenholz argues that the challenged responses are overly long, do not clearly state whether the fact is disputed, and do not cite to admissible evidence in support of an alleged dispute. See Doc. No. 100 at 1-2. Attached to his motion, Eichenholz submits a proposed redaction of the defendants' responses to his statement of material facts. Doc. No. 100-1.

While the Court finds that portions of both the facts and the responses in the statement of material facts, Doc. No. 99, were overly-long and not in conformity with at least the spirit of Rule 56, it declines to strike any portion of it. In resolving the pending motions, the Court relied heavily on the actual evidence submitted by the parties and supplemented this review of the record with the statement of facts where clear and helpful. Accordingly, Eichenholz's motion to strike, Doc. No. 100, is DENIED.

IV.     CONCLUSION

Eichenholz's motion for summary judgment, Doc. No. 84, is DENIED.  The defendants' motion for summary judgment, Doc. No. 86, is ALLOWED as to Counts II, IV, V, VIII, IX, X, and XI.  The motion for summary judgment is DENIED as to Count I on the theories that the defendants retaliated against Eichenholz for asserting his FMLA rights by issuing a performance improvement plan and by completing the 2015 performance review after he resigned; it is ALLOWED on Count I in all other respects.  The defendant's motion to strike, Doc. No. 88, is DENIED without prejudice to renew as a motion in limine before trial.  Eichenholz's motion to strike, Doc. No. 100, is DENIED.

Eichenholz shall show cause within seven days that he can proceed with the FMLA retaliation claim in light of the Court's ruling by either identifying the damages recoverable under Count I, as defined by the Court in this Order, or explaining why such a claim is viable in the absence of any damages.  Defendants may respond within seven days thereafter.  Each memorandum is limited to seven pages.


                              SO ORDERED.


                               /s/ Leo T. Sorokin
                              Leo T. Sorokin
                              United States District Judge